## WILLIAM H. FOSTER *versus* LUCY CLARK.

A promissory note given to an officer to induce him to relinquish or forbear making an attachment of personal property of a third person, on a writ against such third person, is founded on a sufficient and not illegal consideration.

ASSUMPSIT by the payee against the maker of a promissory note, purporting to be for value received, dated August 18th, 1835, for $ 150, payable on demand after the first Tuesday of October 1835.

At the trial, before *Shaw* C. J., it appeared that about the 15th of August, 1835, the plaintiff, then a deputy sheriff, received a writ in favor of one Whitcomb against one Clapp, requiring an attachment to the amount of $ 500, and with directions to attach property ; that Clapp had some stock in his shop, consisting of boots and shoes, and also furniture in his house, liable to attachment ; that the defendant was the sister of Clapp's wife, and was then residing in his house ; that she gave the note now sued, either to obtain the discharge of the furniture actually attached by the plaintiff, or to exempt the same from attachment ; that the plaintiff returned on the writ in favor of Whitcomb an attachment of the furniture ; that he was afterwards called upon to pay, and after a suit against the sheriff, did pay the value of the furniture in satisfaction of Whitcomb's execution ; and that a few days after the date of the note, viz. on the 25th of August, Clapp executed to the defendant a mortgage of the furniture and some other personal property, which was on the same day acknowledged and recorded.

The defendant contended that the note was void for want of a legal consideration ; and also, that being taken by the plaintiff in violation of his duty as an officer, the consideration was illegal and the note, on this ground, was void.

The jury were instructed, that if the plaintiff had actually attached the furniture, and at the request of the defendant gave it up and took her note therefor ; or if, having it in his power to attach it, and being about to do so, he at her request forbore to do so, taking her note therefor ; it was, as between the par-

ties, a good consideration for the note, and not void for illegality.

A verdict was returned for the plaintiff for the amount of the note, and interest from October 1835.

If the Court should be of opinion that the note was void for illegality or want of consideration, the plaintiff was to become nonsuit; otherwise judgment was to be rendered on the verdict.

*Sept. 28th.*   *W. Bliss*, for the defendant, cited to the point, that the consideration of the note was illegal, *Denny* v. *Lincoln*, 5 Mass. R. 385; *Churchill* v. *Perkins*, 5 Mass. R. 541; *Ayer* v. *Hutchins*, 4 Mass. R. 370; *Hodsdon* v. *Wilkins*, 7 Greenleaf, 113; 1 Dane's Abr. 124, *art.* 42, § 3.

*R. A. Chapman, Ashmun* and *H. Morris, contrà*, to show that the consideration was not illegal, cited *Boynton* v. *Willard*, 10 Pick. 170; *Bridge* v. *Wyman*, 14 Mass. R. 195; *Sugars* v. *Brinkworth*, 4 Campb. 46.

Morton J. afterward drew up the opinion of the Court. The jury were instructed, that the relinquishment of an attachment of personal property and the delivery of it to the promisor, or the omission to attach when the promisor had an opportunity to do so, at the request of the promisor, were sufficient and legal considerations for an express promise. Although these instructions contain two distinct propositions, and recognize two different acts to be good considerations for the notes, yet they are so intimately connected and depend so much upon the same principles, that it will not be useful to discuss them separately.

The objections to this note are placed on two grounds. First, it is said that here is no consideration for the promise. And secondly, if there be any consideration, then it is an illegal one.

The note acknowledges a consideration, and this furnishes strong, though not conclusive, evidence of its existence. Where parties deliberately enter into an agreement with a full knowledge of all the circumstances, without any overreaching or inequality of capacity to contract, the law will not set it aside, but upon clear evidence of the existence of some essential defect or illegality. In such case, the slightest considera

tion will be sufficient. And it may consist either in a benefit to the promisor or an injury to the promisee. Here we think both concur. The omission to attach, or the relinquishment of an attachment, at the defendant's request, may well be presumed to be for her benefit. If it were not, why should she desire it ? She may well be supposed to stand in some relation to the parties or the property, which shall make it for her interest to procure its release from an existing lien, or a liability to one. She may have some claim upon it, or may wish to attach it, or may have a contract to purchase, or, as was said to be the case here, may have taken or be about to take a mortgage of it. But even the benefit to her friend may be deemed a good consideration.

But that the discharge was a detriment to the promisee, which constitutes an equally good consideration, is unquestionable. He had attached or was about to attach, and in either case made himself responsible to the original creditor. This debt he was not only liable to pay, but has actually paid. And on this ground there can be no doubt of the sufficiency of the consideration.

2. But the objection principally relied upon is the illegality of the consideration. And herein consists the only difficulty in the case. It is argued that this note was given to induce the plaintiff to neglect his duty ; and that contracts of this nature are against the policy of the law.

It cannot be denied that the general principle is as stated by the defendant's counsel ; and unless this case can be excepted from its operation, the promise must fall. It may be said to be an officer's duty to attach property and to hold it in his own custody until it is needed for the satisfaction of the debt for which it was attached. And an officer thus conducting would undoubtedly be in the strict performance of his duty. But if upon the offer of receipters of undoubted sufficiency, he should refuse to accept them, and hold the property to the great injury of the debtor, he would be thought to be more rigid and harsh than the law or his duty required. The usage of returning property upon receipts is so common, and has been so long practised, that it is deemed if not a part of, yet consistent with, an officer's duty. It at any rate has very often been recognized

as lawful, and receipts thus given have again and again been enforced in our courts. The officer, having returned an attachment, is officially responsible for the property attached. He is legally holden to account to the one or the other or both of the parties. He is responsible for the safe keeping of the property. He may keep it in such way and by such agents as he thinks proper. He may employ a servant to take care of it. He may deliver it to any one, not excepting the debtor, upon a written or verbal promise to return it. If he immediately discharges the attachment or never makes one, it is not a wrong *per se*. If, when the execution issues, it is satisfied, the creditor cannot complain. He can have no action for a false return or loss of an attachment. And if the property be restored, or never taken from the original owner, he cannot complain of the officer's neglect of duty. In short, such conduct cannot be said to be in itself a violation of duty. It is not only countenanced, but encouraged by law.

The cases of a receipt given for goods, and a note to procure their release, are not only analogous but rest upon the same principle. It is true in one respect there is a material difference. The receipter is deemed the servant of the sheriff, and his custody is deemed the possession of the sheriff; which cannot be the case where a note is given. But so far as respects the validity of the promise, it is not easy to distinguish between them. The consideration is the same in both cases. The one is an undertaking to deliver specific articles; the other, to pay a sum of money.

If the contract be to deliver specific articles, what difference can it make, as to the validity of the promise, whether they are the specific articles attached or any other articles? And can a promise to deliver chattels be valid, and a promise to pay money instead thereof be illegal? We think not.

The note may be a legal and valid contract; and yet the whole amount may not always be recoverable. The consideration of it is not the sale of the property. It partakes of the nature of an indemnity. It is like a receipt for the goods attached, and stands in their stead. Only so much of the face of it should be recovered as the goods themselves would have been holden for. If the judgment and expenses of execution

exceed the amount of the note, as is the case here, then the whole note should be recovered. But should they be less, then the note would be enforced only for so much as may be needed to satisfy the execution and costs.

The common cases of bonds taken by officers to indemnify them for ataching property, are much stronger than the case at bar. The object of such a bond is to protect the officer from damages for seizing the property of persons against whom he has no precept. And yet such bonds, even when the seizure turns out to be a trespass, have always been holden to be obligatory ; and have not only been enforced, but recommended by our highest tribunal.

On the whole, we are clearly of the opinion, that the omission to attach, or the restoration of property attached, under the circumstances of this case, cannot be deemed a violation of the principles or the policy of our law. And in our opinion, a note fairly given by a friend of the debtor at his request or with his consent, may well be enforced at law.

*Judgment on the verdict.*